```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| ALBERT DANTZLER, | ) |
| Plaintiff | ) |
| vs. | ) Civil Action No. 05-1727 |
| Secretary JEFFREY BEARD, Executive Secretary JOHN SHAFFER, WILLIAM STICKMAN, Regional Deputy Superintendent, JOHN DOE, Classification Officer, LANCE COUTERIER, Chief Psychologist, FRED MAUE, Chief Psychiatrist, JOSEPH FOLINO, Superintendent of SCI-Greene, KEN MILLER, Unit Manager, HARRY WILSON, Superintendent of SCI-Fayette, | ) Judge David S. Cercone/ ) Magistrate Judge Amy Reynolds Hay |
| Defendants | ) Re: Doc. No. 17 |

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that the Defendants' motion to dismiss be granted in part and denied in part; it should be granted with respect to Plaintiff's claims under the First, Fourth, Fifth and Sixth Amendments and as to all of Plaintiff's state law claims. It should be denied as to his Eighth Amendment claims and his Fourteenth Amendment procedural due process claim and equal protection claim.

### REPORT

Albert Dantzler ("Plaintiff"), a prisoner proceeding in forma pauperis, has filed this civil rights complaint against nine government officials employed by the Pennsylvania Department

of Corrections ("DOC"), complaining of prison conditions.  Doc. 3.  Specifically, Plaintiff contends that his Federal and State Constitutional rights have been violated by the Defendants since July 4, 2001, when an unknown official at SCI-Greene where Plaintiff was then housed, requested of Defendants Beard, Shaffer, Couterier, Maue and the John Doe Classification Officer, to transfer Plaintiff out of the Restricted Housing Unit ("RHU") at SCI-Greene and into the SCI-Greene Special Management Unit ("SMU"), a more intense program for difficult prisoners.  The Defendants approved Plaintiff's placement in the SMU.  In February 2002, Plaintiff was placed in the SMU allegedly without giving the Plaintiff any procedural due process protections in the form of a notice and opportunity to be heard.

   Sometime after June 5, 2003, Defendant Miller requested that Plaintiff be taken out of the SMU and returned to the RHU "as a selective prosecution over several other inmates who was [sic] eligible for removal [apparently to the RHU] but were not[,] all [done] so that Defendant Miller would be in compliance" with the decision of Defendants Beard, Shaffer, Couterier, Maue and Doe to close down the SMU.  Doc. 3 at 3-4.  Sometime prior to April 4, 2004, Plaintiff was placed in the SCI-Greene's RHU.

   On January 4, 2005 Plaintiff was transferred out of SCI-Greene at the direction of Defendant Folino and transferred into the Long Term Segregation Unit {"LTSU") at SCI-Fayette under Defendant Wilson as a "malicious prosecution [of the Plaintiff]

2

by defendants Beard, Shaffer, Couterier, Maue, John Doe and William Stickman without giving the Plaintiff any due process[.]" Doc. 3 at 4, ¶ 6.

On January 5, 2005, Plaintiff was taken before the Program Review Committee and informed that he would be placed in the highest restrictive custody level in the LTSU with the least amount of privileges and they explained to Plaintiff how he could progress to greater privileges and a lower custody level. Plaintiff alleges that the conditions on the LTSU include psychotic inmates who throw feces and urine around, and requiring Plaintiff to spend 23 hours in the cell daily, with lights on in the cell 24 hours a day.

Plaintiff also alleges that there is racism insofar as white inmates get removed out of the LTSU more quickly than minorities. Doc. 3 at 5, ¶ 8. Plaintiff further alleges that "the defendants have placed him in a joint medical unit to retaliate against him for his past inability to cope with prison confinement[.]" Doc. 3 at 6, ¶8.

Plaintiff alleges that the foregoing constitutes violations of his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights guaranteed by the United States Constitution and that his rights under the State Constitution's Article 1 Sections 9, 10, 13, 20 and 26 were likewise violated. Doc. 3 at 6, ¶ 11.

Defendants' Motion to Dismiss was filed pursuant to Fed.R.Civ.P. 12(b)(6), and argues that the complaint fails to state a claim upon which relief can be granted.  Within the Court of Appeals for the Third Circuit, the standard of review applicable to motions to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) is as follows.

> [Courts] must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). We may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  Furthermore, "[b]ecause 'there are no special pleading rules for prisoner civil rights cases,' a complaint should not be dismissed if it specifies 'the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.'" Perry v. Oltmans, 106 Fed.Appx. 476, 479 (7th Cir. 2004).

In addition, because plaintiff is a prisoner who has been granted in forma pauperis status, the court may screen this complaint pursuant to 28 U.S.C. § 1915(e) of the Prison Litigation Reform Act ("PLRA").  Similarly, because Plaintiff is challenging "prison conditions," this court may dismiss the complaint pursuant to 42 U.S.C. § 1997(e).  Furthermore, because he is a prisoner seeking redress from governmental employees, this Court may screen the complaint pursuant to 28 U.S.C. 1915A

because this is as soon as was practicable to conduct the screening.  The mere filing of dispositive motions by the Defendants does not relieve the court of its obligations under the PLRA.  Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000)(en banc) ("The PLRA provides that a district court "shall dismiss" an in forma pauperis complaint that fails to state a claim.  So even if a 12(b)(6) motion is made, that does not relieve the district court of its duty to follow the PLRA.").

### *Discussion*

<u>First Amendment Claims</u>

Defendants point out that Plaintiff fails to state a First Amendment retaliation claim because he failed to allege retaliation for a constitutionally protected activity.  Doc. 18 at 5.  Defendants are correct.  In order to prevail on a retaliation claim, a plaintiff must prove:  (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (*citing*, Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1997)).  Here, the only allegation of retaliation is that the "Defendants have placed [Plaintiff] in a joint medical unit to retaliate against his past inability to cope with prison confinement[.]" Doc. 3 at 5.  As the Defendants point out, this alleged "inability to cope

5

with prison confinement" does not constitute a protected activity as a matter of law.  Nor does Plaintiff argue otherwise.[1]  Hence, Plaintiff's First Amendment retaliation claim should be dismissed for failure to state a claim upon which relief can be granted.

Although the parties do not appear to argue it, there is one other potential First Amendment claim the complaint reveals.  Plaintiff claims that while in the LTSU he was denied magazines, newspapers, T.V. and radio.[2]  Doc. 3 at 5, ¶ 7.  This may be Plaintiff attempting to make out a claim that he was unconstitutionally denied First Amendment materials.  However, this claim is foreclosed by Beard v. [Ronald] Banks, __ U.S. __, 126 S.Ct. 2572, 2580 (June 28, 2006)(finding, in a class action filed on behalf of present and future LTSU prisoners within the Western District of Pennsylvania, thereby rendering Plaintiff a

---

[1]  In fact, the only mention of the retaliation claim in his brief in opposition is as follows:

> Plaintiff states that even [illegible] claim of retaliation which the defendants have singled out the[y] fail to mention Plaintiffs' [sic] due process claim.

Doc. 23 at 2, ¶ E

[2]  To the extent that the Defendants fail to raise this issue and any of the issues below upon which the court rests its recommendation, the Court raises the issues sua sponte pursuant to its screening authority under the PLRA.

class member,[3] that the policy objective of limiting privileges including denial of "all access to newspapers, magazines, and photos" in the LTSU in order to motivate better behavior on the part of particularly difficult prisoners satisfies the Turner standard and hence is not unconstitutional).  Hence, Plaintiff's First Amendment claims should be dismissed for failure to state a claim.

Fourth Amendment Claims

Based on the same allegations, i.e., that he was denied certain property while in the LTSU, Plaintiff may be attempting to make out a Fourth Amendment claim.  However, there is no doubt that the protections of the Fourth Amendment with respect to seizures of a prisoner's "effects" or property do not apply in the prison context.  Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration.").  See also Hudson v. Palmer, 468 U.S. 517, 538 (O'Connor, J. concurring)("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects"). Hence, Plaintiff's Fourth Amendment claims must be dismissed.

---

[3] The LTSU in which Plaintiff was placed was located in SCI-Fayette, which the court takes judicial notice of is located in Labelle, Pennsylvania, which is within Fayette County, one of the Counties encompassed within the territory of the Federal District Court for the Western District of Pennsylvania.

Fifth Amendment Claims

Plaintiff has sued all state actors. The Fifth Amendment protects against federal governmental action. See, e.g., Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158 (1896)("The fifth amendment, which provides, among other things, that such property shall not be taken for public use without just compensation, applies only to the federal government, as has many times been decided.").  There are no federal actors involved in the instant suit.  Accordingly, Plaintiff's Fifth Amendment claims should be dismissed for failing to state a claim upon which relief can be granted.

Sixth Amendment Claims

The Sixth Amendment provides that  "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ."  U.S. Const. Amend. VI.  The explicit guarantees of the Sixth Amendment are applicable only to "criminal prosecutions." U.S. v. Ward, 448 U.S. 242, 248 (1980)("the protections provided by the Sixth Amendment are available only in 'criminal prosecutions.'"). Hence, the Sixth Amendment is wholly inapplicable to Plaintiff's complaint, which involves prison disciplinary matters, custody classifications, punitive segregation, etc., none of which is a criminal prosecutions within the meaning of the Sixth Amendment.  See, e.g., United States v. Gouveia, 704 F.2d 1116, 1121 (9th Cir. 1983) (en banc)("It is well established that prison disciplinary

proceedings are not 'criminal prosecutions' as that term is used in the Sixth Amendment")(citations omitted), <u>rev'd on other grounds</u>, 467 U.S. 180 (1984).  Therefore, Plaintiff's Sixth Amendment claims must be dismissed.

>  <u>Eighth and Fourteenth Amendment Claims</u>

Plaintiff's complaint adequately alleges a procedural due process claim for his placement in the LTSU and/or SMU and also adequately alleges an Eighth Amendment cruel and unusual punishment claim as to the conditions that occurred therein. Under the analysis required by <u>Sandin v. Connor</u> 515 U.S. 472 (1995), there is a potential set of facts which, consistent with the facts alleged in the complaint, could show Plaintiff had a liberty interest in remaining free from the SMU and/or the LTSU. <u>See, e.g.</u>, <u>Mitchell v. Horn</u>, 318 F.3d 523, 532-33 (3d Cir. 2003)(reversing a District Court's sua sponte grant of dismissal and referring to the" fact intensive" nature of an inquiry under <u>Sandin</u>, and remanding for development of the record in a case involving a challenge to 90 days of disciplinary confinement). Likewise, the conditions Plaintiff mentions that allegedly occurred in those units may constitute cruel and unusual punishment.  In addition, Plaintiff's invocation of racial animus and allegation that white inmates are treated differently from minority inmates is sufficient to state an Equal Protection claim under the Fourteenth Amendment.

Miscellaneous Defenses

Defendants raise a statute of limitations defense to all claims that arose before December 12, 2003, i.e., two years prior to Plaintiff signing the complaint in this case.  In response, Plaintiff claims that there was a "continuing wrong" and, as well, apparently invokes the "discovery rule," i.e., claiming the statute of limitations did not start to run until he could have reasonably discovered the wrongs, and possibly equitable tolling due to concealment.  Doc. 23 at 3, ¶ A.  As a result, viewing the complaint in a light most favorable to Plaintiff, it cannot be fairly said that he could prove no set of facts consistent with his complaint to defeat a statute of limitations defense.  Accordingly, the statute of limitations defense cannot serve to dismiss claims in the complaint at this procedural juncture.

Defendants next raise the defense that Defendants Folino and Wilson are not alleged to have personally violated Plaintiff's rights as required under Section 1983.  See, e.g., Rode v. Dellarciprete, 845 F.2d 1195 1207 (3d Cir. 1981)(requiring personal involvement for liability to attach).  Plaintiff's response indicates that but for their approval of his placement in the LTSU/SMU, he would not have been subjected to the deprivations of rights he alleges.  This is sufficient at this

juncture. See, e.g., Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).[4]

In a footnote, Defendants argue that the only allegation against Defendant Miller is that he transferred Plaintiff from the SMU at Greene to the RHU at Greene, a transfer that the Defendants claim is a favorable lowering of Plaintiff's custody level. Doc. 18, at 12, n.1. Accordingly, Defendants argue that the complaint should be dismissed as against Miller. The complaint, however, claims that Defendant Miller made the transfer "as a selective prosecution" and further suggests that many inmates are transferred directly from the SMU to general population and Plaintiff was denied such a move. Complaint at p. 4, paragraph 5. Such allegations, if credited, could state a claim of possible retaliation or equal protection violation. Hence, Defendant Miller should not be dismissed at this procedural juncture.

---

[4] Defendants argue that "a supervisor has 'no affirmative duty to train, supervise or discipline so as to prevent' unconstitutional conduct." Doc. 18 at p. 10 (quoting Brown v. Grabosski, 922 F.2d 1097, 1120 (3d Cir. 1990). In Brown, the court was addressing a qualified immunity defense for actions taken in 1985 and the Brown court concluded that in 1985 the law was not clearly established that supervisors had an affirmative obligation. See, e.g., Rosenberg v. Vangelo, 93 Fed.Appx. 373, 379 (3d Cir. 2004). However, at the time Brown was decided, i.e., in 1990, an affirmative obligation on supervisors to train, supervise and discipline was clearly established. Id. Accordingly, Defendants' reliance on Brown is misplaced and the failure to train, supervise or discipline may constitute sufficient personal participation to state a claim, if other conditions are met, making this argument more properly addressed in a summary judgment motion.

11

### State Law Claims

Plaintiff raises state law claims under the Pennsylvania Constitution and well as a possible state law malicious prosecution claim.  In response, Defendants raise the state statutory sovereign immunity defense, asserting that they are all immune from Plaintiff's state law claims, including his State Constitutional law claims.  The Defendants are correct.  See, e.g., Heicklen v. Hoffman, 761 A.2d 207 (Pa. Cmwlth. 2000)(applying Sovereign Immunity statute to bar claim against a Commonwealth party under State Constitution); Valensky v. Laughlin, 2005 WL 2250686, *12 (W.D. Pa. 2005)("Pennsylvania courts have held that there is no waiver of sovereign immunity for claims based upon the Pennsylvania Constitution. . . . Therefore, Plaintiffs cannot maintain a claim for violation of Article I, section 8 of the Pennsylvania Constitution against these state actors"").  The same holds true for any potential malicious prosecution claim; it is barred by sovereign immunity. Martz v. Southeastern Pennsylvania Transp. Authority, 598 A.2d 580 (Pa.Cmwlth. 1991)(applying Sovereign Immunity statute to bar malicious prosecution claim).  It does not appear and, Plaintiff does not argue that any of his state law claims come within an exception to the Sovereign Immunity statute.  Nor are Plaintiff's arguments claiming that the Defendants do not enjoy sovereign

immunity persuasive. See Doc. 23 at 2, ¶ B.[5]  Hence, all of Plaintiff's state law claims, should be dismissed for failure to state a claim upon which relief can be granted.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/   Amy Reynolds Hay
United States Magistrate Judge

---

[5]  In one of his arguments Plaintiff appears to confuse the doctrine of sovereign immunity, found at 42 Pa.C.S.A. § 8522, with the doctrine of Political Subdivisions Tort Immunity found at 42 Pa.C.S. § 8550 et seq.  The two are distinct and different exceptions apply under the respective statutes.  Contrary to Plaintiff's contention, the Sovereign Immunity Statute affords immunity even for acts done with actual malice or with willfulness. See Maples v. Boyd, 2004 WL 1792775, *9 (E.D. Pa. Aug. 9, 2004), wherein the court held that

> Maples contends that the actions of Boyd and Canino constitute willful misconduct, or intentional tort, that divests them of sovereign immunity. However, willful misconduct can only abrogate sovereign immunity for employees of local, or municipal, agencies. See 42 Pa. Cons.Stat. § 8550 (abrogating immunity for "local agency or employee thereof" when employee's action constituted "crime, actual fraud, actual malice or willful misconduct"). Employees of Commonwealth agencies are immune from liability even for intentional torts.

(footnote omitted).

13

Dated: 14 November, 2006

cc:   The Honorable David S. Cercone
      United States District Judge

      Albert Dantzler
      DZ-4398
      SCI Fayette
      P.O. Box 9999
      50 Overlook Drive
      Labelle, PA 15450

      By Notification of Electronic Filing:
      Mariah Passarelli, Esquire